UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC # _____
DATE FILED: July 24, 2020

FAIR HOUSING JUSTICE CENTER, INC.,

                                   Plaintiff,

                        - against -

PELICAN MANAGEMENT, INC., FORDHAM ONE
COMPANY, LLC, and CEDAR TWO COMPANY, LLC.,

                                   Defendants.

PELICAN MANAGEMENT, INC., FORDHAM ONE
COMPANY, LLC, and CEDAR TWO COMPANY, LLC.,

                                   Counterclaimants,

                        - against -

FAIR HOUSING JUSTICE CENTER, INC.,

                                   Counterclaim-Defendant.

**OPINION AND ORDER**

18 Civ. 1564 (ER)

Ramos, D.J.:

        The Fair Housing Justice Center, Inc. ("FHJC") brought this action in February 2018[1]

alleging that Pelican Management, Inc., Fordham One Company, LLC, and Cedar Two

Company, LLC (collectively "Defendants"), owners of rental buildings in New York City, had

adopted a minimum income requirement in the fall of 2015 that was unlawful under both the Fair

Housing Act (the "FHA") and New York City Human Rights Law ("NYCHRL").  Specifically,

Defendants' minimum income policy at that time required that all prospective renters earn an

_____

[1] The complaint was originally filed by both FHJC and Alfred Spooner ("Spooner").  On May 2, 2019, the parties
filed a stipulation of dismissal of all claims by Spooner in the instant action with prejudice.  *See* Doc. 75.

annual income of at least 43 times their total monthly rent.  According to FHJC, that policy virtually excluded all renters who received rental subsidies, a large percentage of whom have disabilities.  In January of 2019, Defendants adopted a new minimum income policy and thereafter asserted a counterclaim in the instant action seeking a declaratory judgment that this new policy is lawful.[2]  Pending before the Court is FHJC's motion to dismiss Defendants' counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons set forth below, FHJC's motion is DENIED.

## I.   Background

### A.   The Complaint[3]

In the fall of 2015, Defendants adopted a policy requiring that all prospective renters in their buildings earn an annual income of at least 43 times their total monthly rent (the "Old Policy").  Second Am. Compl. ("SAC"), Doc. 86, ¶¶ 45–52.  This policy applied even if a subsidy paid a portion or the entirety of the rent.  *Id*.

Spooner, an elderly low-income man with cancer and other physical disabilities, was a client of the Olmstead Housing Subsidy ("OHS") program—a state funded rental subsidy program for disabled low-income persons that guarantees the renter need only pay thirty percent of his monthly income towards rent with the remainder paid for by the state.  *Id*.  ¶¶ 20–28, 34.  Spooner received an annual income of $9,246 from Social Security.  *Id*. ¶ 69.  Spooner's OHS subsidy allowed him to rent an apartment for up to $1,419 per month, for which he only needed

---

[2] It is not clear from Defendants' pleading whether the counterclaim is asserted under the FHA or the Declaratory Judgment Act.  At the pre-motion conference, when questioned on this issue, Defendants responded "both."  Tr., Doc. 105, at 18:13–15.

[3] Both the original and the first amended complaints challenge Defendants' minimum income requirement policy as a violation of the FHA and NYCHRL.  The parties stipulated to the filing of the second amended complaint in order to name the proper defendants to the instant action, but which otherwise contains identical factual allegations to its predecessors.  *See* Doc. 85.

to contribute 30 percent of his month income, $231.15.  *Id*. ¶ 34.  In March 2017, Defendants rejected Spooner's application to rent one of two apartments that were within his price range because he did not earn 43 times the monthly rent.  *Id*. ¶¶ 38–42.  Based on the advertised monthly rent of $1,384 and $1,300 respectively, Spooner would have had to earn an annual income of $59,512 and $55,900 to satisfy the Old Policy.  *Id*. ¶ 80.

Upon receiving a complaint from Spooner, FHJC conducted telephone tests to investigate his claim.  *Id*. ¶¶ 45–53.  The testers posed as prospective renters who received rental subsidies from various government programs including OHS, HIV/AIDS Services Administration ("HASA"), or the Housing Choice Voucher Program (an income-based subsidy used by many low-income disabled renters) (hereinafter "Section 8").  *Id*.  Defendants allegedly told all testers they would not qualify to rent in Defendants' buildings irrespective of their subsidies unless they earned 43 times the monthly rent in gross annual income.  *Id*.  FHJC claims that it is impossible to qualify for OHS or HASA, and nearly impossible to qualify for Section 8, while meeting the minimum income requirement of the Old Policy.  *Id*.  ¶¶ 75–88.

### B.     Defendants' New Policy[4]

In January 2019, nearly eleven months after the instant action was filed, Defendants adopted a new minimum income policy called Application Criteria 2019 (the "New Policy").  *See* Doc. 94, ¶ 142.  Among other changes, the New Policy now requires applicants who receive

---

[4] The following facts are drawn from the allegations in Defendants' counterclaim, Doc. 94, ¶¶ 141–152, which the Court accepts as true for purposes of the instant motion to dismiss.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

rent subsidies to earn a gross annual income 43 times of only the portion of the monthly rent he will be required to pay, rather than 43 times the total monthly rent.[5]  *Id.* ¶ 145.

## II.    Procedural History

Spooner and FHJC initiated the instant action against Cedar Two Company, LLC., Deegan Two Company, and Goldfarb Properties, Inc. (the "Original Defendants") on February 21, 2018.  Doc. 1.  The original complaint alleged that the Old Policy discriminated against Spooner and other recipients of rental subsidies in violation of the FHA and NYCHRL.  *See id.*  On April 23, 2018, the Original Defendants moved to dismiss the complaint.  Doc. 25.  On May 21, 2018, Judge Forrest, to whom the case was originally assigned, granted Spooner and FHJC leave to file an amended complaint without ruling on Defendants' motion.[6]  *See* Doc. 34.  On June 4, 2018, Spooner and FHJC filed the amended complaint.  Doc. 37.  On June 15, 2018, the Original Defendants moved to dismiss the amended complaint.  Doc. 37.  At a telephonic conference on July 9, 2018, Judge Forrest denied the Original Defendants' motion to dismiss, concluding that there were sufficient facts pled to raise an inference that would support both a disparate impact claim and an intentional discrimination claim.  *See* Doc. 42; *see also* Tr., Doc. 44, at 3:17–4:3.  On July 26, 2018, the Original Defendants answered the amended complaint.  Doc. 43.  On July 2, 2019, the parties stipulated to the filing of a second amended complaint.[7]

---

[5] In a deposition, a representative of Defendants characterized the New Policy differently from the counterclaim, namely, that the New Policy required applicants who receive rental subsidies to earn a gross annual income of only 40 times, as opposed to 43 times, of their portion of the rent.  *See* Doc. 114, Ex. C, at 253:25–254:23.

[6] The Order noted that "[t]he Court intends to rule on the sufficiency of the pleadings only once."  Doc. 34.

[7] According to FHJC, the second amended complaint was filed for the purpose of clarifying the proper defendants because Defendants had disclosed that the company under whose name they operate is a shell company.  *See* Doc. 108, at 6.  The stipulation provided that two of the defendants named in both the original and amended complaint, Deegan Two Company and Goldfarb Properties, Inc., would be replaced by Pelican Management, Inc. and Fordham One Company.  Doc. 85.

Doc. 85.  On July 23, 2019, nine days after they were served with the second amended complaint, Defendants filed an answer and asserted the counterclaim at issue here, in which they sought a declaration that the New Policy is lawful.  Doc. 94.  On October 15, 2019, FHJC moved to dismiss that counterclaim.  Doc. 107.

### III.    Legal Standard

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the counterclaim as true and draw all reasonable inferences in the counterclaimant's favor.  *See Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 128 (2d Cir. 2011).  However, the Court is not required to credit legal conclusions, bare assertions, or conclusory allegations.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681, 686 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "To survive a motion to dismiss, a [counterclaim] must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).  A claim is facially plausible when the counterclaimant "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  The counterclaimant must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  If the counterclaimant has not "nudged [its] claims . . . across the line from conceivable to plausible," the counterclaim must be dismissed.  *Id.* at 680 (quoting *Twombly*, 550 U.S. at 570).

### IV.    Discussion

FHJC contends that Defendants' counterclaim should be dismissed because:  (1) it was improperly filed without court permission; (2) even if such leave were sought, Defendants' counterclaim unduly expands the litigation and prejudices FHJC; and (3) it fails to state a claim even if it is considered on its merits.  The Court addresses each of FHJC's arguments below.

###### *A.*      **Appropriateness of Defendants' Counterclaim**

As a threshold matter, both parties agree that the Second Circuit Court of Appeals'

decision in *GEOMC Co. v. Calmare Therapeutics Inc.* ("*GEOMC*") governs whether

Defendants' counterclaim was properly filed.  918 F.3d 92 (2d Cir. 2019).

###### 1.      **Procedural Appropriateness**

Preliminarily, FHJC challenges the filing of Defendants' counterclaim without prior

leave of this Court as improper.  FHJC points to the following passage in *GEOMC*:

> As to procedure for presenting a new counterclaim, most attempts to amend an answer to
> include a new counterclaim require permission of the court or consent of the parties.  *See*
> Fed. R. Civ. P. 15(a)(2).  The only exceptions occur when a counterclaimant seeks to
> amend its within 21 days after serving its original answer, *see* Fed. R. Civ. P.
> 15(a)(1)(A), or within 21 days after service upon it of (1) a required responsive pleading,
> *e.g.*, an answer to a counterclaim, or (2) a motion under Rule 12(b), (e), and (f), *see* Fed.
> R. Civ. P. 15(a)(1)(B).

918 F.3d at 100–01.  Therefore, FHJC contends, the Second Circuit made clear that Defendants

must, subject to the two exceptions spelled out in Rule 15, either receive consent from the

plaintiff or seek leave from the Court to file a new counterclaim.

What FHJC fails to cite, however, is the statement immediately after, that—as in the

instant case— "attempts to amend an answer to include a new counterclaim after an amended

complaint that requires a response has been filed must be made within 14 days after service of

the amended complaint."  *Id*.  The Second Circuit further clarified in footnote 14 that a defendant

may elect to include in an amended answer a new counterclaim.  *Id*. at 101, n. 14. (explaining

that the 14-day limit under Rule 15(a)(3) governs the responsive pleading where "a defendant,

responding as required to a plaintiff's amended complaint, elects to include in its amended

answer a new counterclaim").

Accordingly, the counterclaim was properly and timely asserted in response to the

amended complaint.

## 2.    Substantive Appropriateness

FHJC also contends that Defendants' attempt to introduce a new counterclaim at the close of fact discovery[8] should be rejected because it unduly expands the litigation and prejudices FHJC.  Specifically, FHJC contends that Defendants' counterclaim, based on the New Policy, raises issues beyond the scope of all the complaints, which only challenge the Old Policy. FHJC further contends that it would be prejudiced by the counterclaim because:  (1) it would be forced to litigate Defendants' remedy before it has a chance to prove Defendants' liability under the Old Policy; (2) that even if the New Policy is legal, which FHJC disputes, it would have no ability to seek an injunction from the Court requiring Defendants to follow it going forward, since the FHA only authorizes an issuance of injunctive relief based on a prior finding that a discriminatory housing practice has occurred or is about to occur[9]; and (3) that it would be left in the position of having to either accept the New Policy as remedy, for which FHJC has only taken limited discovery, or litigate on pain of having to pay Defendants' fees.

The Second Circuit has recognized that "[a]t a late stage of the litigation…a new counterclaim that raises issues beyond the scope of the new claims made in the most recent amended complaint should normally not be permitted if it exceeds the scope of the plaintiff's new claims." *GEOMC*, 918 F.3d at 100.  On a Rule 12(b)(6) motion, the two primary factors to be considered are whether the new counterclaim will prejudice the counterdefendant or "unduly expand" the litigation.[10]  *Id*. at 101.  Here, Defendants do not contest that the second amended

---

[8] Pursuant to a discovery schedule entered on March 22, 2019, fact discovery was to have been completed by June 18, 2019.  Doc. 73.

[9] The FHA provides that if the court finds that "a discriminatory housing practice has occurred or is about to occur," it may award, among other remedies, injunctive relief.  42 U.S.C. 3613(c)(1).

[10] Under *GEOMC*, a new counterclaim may also be challenged on the grounds of "undue delay, bad faith or dilatory motive," 918 F.3d at 100.  However, none of those are raised by FHJC in the instant motion.

complaint is largely identical to the original and amended complaints in terms of claims asserted and factual allegations made.  Therefore, Defendants' new counterclaim does appear to raise issues beyond the scope of FHJC's most recent amendment, which involved only the substitution of two defendants.  Nevertheless, the Court finds that there is little risk of either undue expansion of the litigation, or prejudice to FHJC.

Contrary to FHJC's assertion, Defendants' counterclaim based on the New Policy does not unduly expand the scope of the instant action.  In particular, FHJC repeatedly stresses that the New Policy should only be introduced as a proposed remedy in the so-called "remedy phase" of the litigation, that is, after there has been a ruling on the legality of the Old Policy.[11]  That argument, however, effectively concedes that Defendants' counterclaim does not cause undue expansion of the instant case because the "remedy phase" is, perforce, also part of the litigation. In addition, Defendants' income requirements for prospective renters have been at core of this case from the beginning.  Notably, FHJC has expressed its approval, on multiple occasions during the course of this litigation, of an income requirement based only on the part of the rent a prospective tenant would be responsible for paying, as the New Policy clearly does.  *See* Am. Compl., Doc. 36, ¶ 66 ("a landlord maintaining a minimum policy…should calculate an applicant's income based on the applicant's monthly share of the total rent rather than the total rent being charged");  *see also* SAC, ¶¶ 66–68 (same).

---

[11] FHJC cites to two decisions in this Circuit for the proposition that a liability determination must be made before any evaluation of proposed remedies.  *See* Doc. 113, 8–9 (citing both *U.S. v. Space Hunters, Inc.* ("*Space Hunters*"), No. 00 Civ. 1781 (RCC), 2004 WL 2674608 (S.D.N.Y. Nov. 23, 2004) *aff'd*, 429 F.3d 416 (2d Cir. 2005), and *Mhany Mgt. Inc. v. Inc. Vill. Of Garden City* ("*Mhany*"), 4 F. Supp. 3d 549 (E.D.N.Y. 2014).  Although FHJC is technically correct that those two cases proceeded in this order, nothing in those cases mandates such a sequence. As Defendants point out, mandating such a sequence may discourage or at least delay early attempts at complying with the law.

The risk of prejudice is also minimal.  FHJC's contention that it would be prejudiced because it would no longer be able to proceed with its own case if Defendants' counterclaim is permitted and proven, is unpersuasive.  To begin with, the Court must still rule on the legality of the Old Policy even if the New Policy is ultimately declared to be lawful, given that FHJC seeks not only declaratory and injunctive relief, but also damages.  *See* SAC, at 26.; *see also City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982) ("It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice").  Moreover, to the extent that the New Policy is indeed an adequate remedy, that is not prejudice about which FHJC should be heard to complain.  On the other hand, if the New Policy is deemed not to be an adequate remedy, FHJC remains free to advocate for a more adequate remedy.

Additionally, FHJC, having been informed of Defendants' adoption of the New Policy in April of 2019, has already taken substantial discovery thereon.  Specifically, FHJC acknowledges that it has already taken two depositions and received numerous documents related to fourteen tenant applications under the New Policy.  *See* Doc. 113, at 6–7.  While the parties disagree as to the sufficiency of this discovery, the Court need not resolve that issue here, particularly because any additional relevant discovery would be needed even in the absence of Defendants' counterclaim, as FHJC acknowledges, to assess the New Policy's adequacy as a proposed remedy.[12]  Finally, because the Court finds below that Defendants are not entitled to fee-shifting under the FHA solely by prevailing on their counterclaim, FHJC cannot claim that it would be prejudiced by Defendants' assertion of fee-shifting.

---

[12] FHJC has requested additional fact discovery, should Defendants' counterclaim be allowed.  *See* Doc. 113, at 7. To that end, the Court will allow limited additional fact discovery.

Accordingly, because Defendants' counterclaim does not unduly expand the instant action or prejudice FHJC, the Court will not dismiss it pursuant to *GEOMC*.

### B.       Failure to State a Claim

Next, FHJC challenges the Defendants' counterclaim on the basis that Defendants lack standing under the FHA, and that it is not ripe under the Declaratory Judgment Act.

The parties' disagreement with respect to Defendants' standing boils down to its source. FHJC contends that Defendants' source of standing in this context is the Declaratory Judgment Act and not the FHA. The Court agrees. The FHA only confers standing on any "aggrieved person." *See Bank of Am. Corp. v. City of Miami, Fla.*, 137 S. Ct. 1296, 1300 (2017). An "aggrieved person" is defined as any person who (1) claims to have been injured by a discriminatory housing practice or (2) believes that he or she will be injured by such a housing practice that is "about to occur." *See* 42 U.S.C. § 3602(i). Defendants are neither, as they acknowledge. *See* Doc. 111 ("It is common for parties threatened with legal action under statutes under which they could not be plaintiffs to bring declaratory judgment actions to determine the legality of their actions under those statutes."). Furthermore, the cases Defendants cite only stand for the proposition that defendants who are sued for violation of a federal statute may seek a declaratory judgment that its conduct is lawful under that statute. Indeed, every case cited by Defendants but one[13] was brought under the Declaratory Judgment Act, not the underlying statute under which the defendant was sued. FHJC does not, however, dispute that Defendants have standing under the Declaratory Judgment Act.

---

[13] The only case cited that was not brought under the Declaratory Judgment Act was a First Amendment challenge to the constitutionality of a statute and has no applicability to this case. *Wollschlaeger v. Governor of Florida*, 848 F.3d 1293, 1300 (11th Cir. 2017).

Nevertheless, the Court's agreement with FHJC stops there.  Contrary to FHJC's assertion, Defendants' counterclaim under the Declaratory Judgment Act is ripe.  A claim for declaratory judgment is justiciable when "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). Here, the parties are already in an active dispute over Defendants' minimum income requirements.  Furthermore, FHJC has already questioned the legality of the New Policy. Finally, while FHJC repeatedly argues that Defendants' counterclaim is only ripe at the remedial phase of the instant action, the remedial phase is part of the action and therefore the legality of the New Policy is already put at issue in the instant action.   Accordingly, Defendants' counterclaim under the Declaratory Judgment Act is ripe for decision, and FHJC's motion to dismiss the counterclaim in its entirety is denied.

### *C.*     **Defendants' Entitlement to Fee Shifting under the Declaratory Judgment Act**

Lastly, the parties dispute whether Defendants, should they prevail on their counterclaim, would be entitled to an award of attorney's fee under the FHA[14].  The starting point for consideration of Defendants' claim of entitlement to recover attorney's fees is the "American Rule," which provides that parties must pay their own attorney's fees unless the prevailing party is entitled to fees "by agreement between the parties, statute, or court rule."  *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 199 (2d Cir. 2003).

As applied to this case, Defendants cannot invoke the fee-shifting provision of the FHA by prevailing on its counterclaim under the Declaratory Judgment Act.  The FHA provides that

---

[14] Preliminarily, Defendants do not argue that the Declaratory Judgment Act itself provides the necessary statutory authority for their request for attorney's fees.

in a civil action under 42 U.S.C. § 3613(a), a court may exercise its discretion to permit the prevailing party to recover reasonable attorney's fee and costs.  42 U.S.C. § 3613 (c)(2). Furthermore, Courts have recognized that a prevailing party in an action for declaratory relief is "entitled to attorney's fees only when those costs would be recoverable under non-declaratory judgment circumstances."  *OneWest Bank N.A. v. Lehman Bros. Holding Inc.*, No. 14 Civ. 8916 (JMF), 2015 WL 1808947, at *2 (S.D.N.Y. Apr. 20, 2015) (internal quotation marks and citation omitted).  Therefore, since Defendants are not "aggrieved person[s]" under the FHA, their counterclaim cannot be a civil action under 42 U.S.C. § 3613(a); and they cannot invoke the fee-shifting provision of the FHA by prevailing solely on their counterclaim.[15]

Defendants' citation to *Zamoyski v. Fifty-Six Hope Road Music Ltd., Inc.*, a copyright infringement action, for the proposition that the Court may nevertheless award attorney's fees on their counterclaim here because it is a "like matter" to a civil action under 42 U.S.C. § 3613(a), is unpersuasive.  767 F. Supp. 2d 218 (D. Mass. 2011).  Section 505 of the Copyright Act contains similar fee-shifting language providing that in any civil action thereunder, a court may award a reasonable attorney's fee to the prevailing party.  *See* 17 U.S.C. § 505.  In *Zamoyski*, the court awarded fees under the Copyright Act to the defendant prevailing on their counterclaim seeking declaration of copyright ownership, finding that the counterclaim, even though technically not a civil action under 17 U.S.C. § 505, was a "like matter" for which § 505 fees are available.  *Id.* at 222.  In doing so, however, the *Zamoyski* court explicitly relied on the First Circuit Court of Appeals' holding in *InvesSys, Inc. v. McGraw-Hill Companies, Ltd.*, that "the [Copyright Act]

---

[15] FHJC also contends persuasively that permitting Defendants to invoke the FHA's fee-shifting provision under these specific circumstances would set a dangerous precedent, as any defendant in an FHA discrimination action could do so based on a newly adopted remedy during the course of a litigation, effectively increasing the risk of pursuing an FHA discrimination claim for, and thus deterring, victims of housing discrimination.  This would frustrate the FHA's "policy of promoting private enforcement of the [FHA]," and hence its stated policy to provide for fair housing.  *Price v. Pelka*, 690 F.2d 98, 101–02 (6th Cir. 1982).

case law has used common sense to carry out Congress' underlying intent to provide for attorney's fees in copyright enforcement or like matters but not for other civil claims that do not involve copyright."  369 F.3d 16 (1st Cir. 2004) (internal quotation marks and citations omitted). Here, the Court agrees with FHJC that *Zamoyski* is clearly distinguishable from the instant case, which is a civil right action that does not involve copyright.

Furthermore, the Supreme Court in *Fogerty v. Fantasy, Inc.*, recognized both Congressional intent and important policy considerations for treating plaintiffs and defendants differently when awarding attorney's fees under civil rights statutes, and instructed that those considerations are absent under the Federal Copyright Act.  510 U.S. 517, 522–524 (1994) (citing *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978); *see also Sassower v. Field*, 973 F.2d 75, 79 (2d Cir. 1992).  The Supreme Court recognized that civil rights plaintiffs, acting as "private attorney[s] general," often lack the means to litigate their claims against defendants with more resources.  *Fogerty*, 510 U.S. at 524.  Therefore, Congress addresses this imbalance in part, by treating plaintiffs more favorably than defendants in terms of fee awards.  *See id*.  On the other hand, plaintiffs in copyright infringement cases can range from "corporate behemoths to starving artists," and the primary purpose of the Copyright Act, to "encourage production of original literary, artistic and musical expression for the public good," is well served by treating meritorious copyright defenses and infringement claims similarly.  *See id*.  Accordingly, the Court is unpersuaded that it should treat Defendants' counterclaim as a "like matter" to a civil action under the FHA for purposes of fee awards.

Nevertheless, the Court concludes that Defendants' request for attorney's fee and costs, should not be dismissed outright at this stage.  The parties do not dispute that the instant action commenced by FHJC against the Old Policy is a civil action under 42 U.S.C. §3613(a).  While

the chances are slim[16], it is still theoretically possible for Defendants to make a satisfactory showing that the instant action is "frivolous, unreasonable, or without foundation," and invoke the fee-shifting provision of the FHA, should they prevail.  *Cf. Sassower*, 973 F.2d at 79 (finding that defendants could not make a showing that the suit was "frivolous, unreasonable, or without foundation" when the district judge already recognized that it pled a *prima facie* case of discrimination and presented a factual dispute for the jury").  In any event, even in the absence of statutory authority, and under the American Rule where parties must generally pay their own attorney's fees, this Court retains its inherent "equitable power to make awards…including a reasonable attorneys' fee" in certain circumstances, such as if a party has acted in bad faith.  *See OneWest Bank N.A.*, 2015 WL 1808947, at *3 (internal quotation marks and citations omitted).  Accordingly, the Court will not strike Defendants' broadly worded request for fees at this point.

## V.      Conclusion

For the foregoing reasons, FHJC's motion to dismiss Defendants' counterclaim is DENIED.  The Clerk of the Court is respectfully directed to terminate the motion, Doc. 107.

It is SO ORDERED.

Dated:     July 24, 2020
           New York, New York

_____
Edgardo Ramos, U.S.D.J.

---

[16] This is because Judge Forrest already denied Defendants' motion to dismiss the instant action once, finding that there are sufficient facts pled that plausibly support both a disparate impact claim and an intentional discrimination claim, and that there has been no indication, even after the close of fact discovery on FHJC's claims, that its action is frivolous, unreasonable, or without foundation in any way.