UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FAIR HOUSING JUSTICE CENTER, INC.,

                    Plaintiff,

        v.

PELICAN MANAGEMENT, INC.;
FORDHAM ONE COMPANY, LLC;
CEDAR TWO COMPANY, LLC,

                    Defendants.

Case No.: 1:18-cv-01564 (ER)(OTW)

---

**AFFIRMATION OF DIANE L. HOUK, ESQ.**

DIANE L. HOUK, being duly sworn, deposes and states under the penalties of perjury:

1.        I am a partner in the law firm of Emery Celli Brinckerhoff Abady Ward & Maazel LLP ("ECBAWM"), counsel to Plaintiff Fair Housing Justice Center ("FHJC") in this case. I submit this affirmation in support of Plaintiff's motion for attorneys' fees and costs, consisting of $1,363,616.00 in attorneys' fees and $40,128.22 in costs.

2.        This affirmation is made upon personal knowledge, unless otherwise noted. I am familiar with the facts discussed herein and attach as exhibits true and correct copies of the documents mentioned herein.

**ECBAWM's Hourly Rates Are Reasonable and Standard in the Market**

3.        ECBAWM is a litigation boutique that focuses on civil rights, commercial, criminal, and attorney ethics matters. We represent individuals, businesses, and institutions in all aspects of litigation and pre-litigation dispute resolution, from negotiation, mediation and arbitration, through hearings, trials, and appeals.

4.      All attorneys and paralegals at ECBAWM maintain contemporaneous time records reflecting the time spent on this and other matters. Time spent on this matter was entered into a computer program directly by the timekeeper. The timekeeper indicates the date and amount of time spent on a task, describes the work that was performed during the specified time period, and identifies the case to which the time should be charged. Attached as Exhibit 1 is a full and correct copy of those time entries relating to the work conducted for this case by ECBAWM.

5.      I redacted portions of entries to Exhibit 1 to protect communications protected by the attorney-client privilege and work product privilege. Should the Court request it, we are prepared to submit unredacted records for *ex parte*, *in camera* review by the Court of the redactions for work product privilege.

6.      I also redacted Exhibit 1 entries related solely to Plaintiff Alfred Spooner's settlement in this case. ECBAWM is not seeking fees for work performed in negotiating, drafting, and finalizing that settlement. I have included time spent meeting with Mr. Spooner, investigating his claims—including his circumstances and information about the Olmstead voucher program in the Complaint—and other work regarding Mr. Spooner. Mr. Spooner's initial complaint to FHJC initiated its investigation of Defendants' rental policies, which led to the broader claims ultimately asserted by FHJC. FHJC used facts about Mr. Spooner's complaint during discovery and at trial to prevail in this action. Any entries redacted in their entirety belong to this category.

7.      The primary ECBAWM attorneys working on this case are myself, ECBAWM associate David Berman, and ECBAWM associate Sonya Levitova. The current paralegal working on this case is ECBAWM paralegal Toby Shore; former paralegals also

worked on the case, including Kathryn Ravey and Jocelyn Rodriguez. Ms. Rodriguez conducted all the paralegal work for and during both portions of the trial which she attended personally to assist with exhibits and witnesses. Other ECBAWM paralegals, associates, and partners provided occasional assistance, and their time is also documented in our contemporaneous time records. *See* Ex. 1.

8.      Attached as Exhibit 2 is a summary chart which illustrates the number of hours billed by each ECBAWM timekeeper, the timekeeper's hourly rate, a total for each timekeeper, any billing discretion I exercised on that timekeeper's total (as described *infra*), and a total of all the attorneys' fees ECBAWM is seeking in this case, which includes paralegal time.

9.      Specifically, as of November 9, 2023 (the business day before this submission is due), ECBAWM had billed over 2,600 hours litigating this case. This number does not include any work performed on the pending appeal, including Defendants' motion for a partial stay.

10.     Attached as Exhibit 3 is a chart listing the costs incurred in litigating this case. This chart is based on invoices maintained in ECBAWM's files.

11.     Attached as Exhibit 4 is a chart summarizing the types of work ECBAWM performed in litigating this case, organized chronologically.

12.     The words "confer" or "conference" are commonly used in ECBAWM's billing records to refer to time spent speaking both in person and on the phone, as well as the time spent drafting and replying to emails, with the client, opposing counsel, other attorneys, and staff members.

13.     ECBAWM routinely and currently charges and receives from its hourly clients: $725 per hour for me, $550 per hour for David Berman, $475 per hour for Sonya

Levitova, and the same rates for attorneys with comparable levels of experience and qualifications, as well as $225 per hour for the work of Jocelyn Rodriguez and its other paralegals.

14.     In 2022 alone, at least 167 different clients paid ECBAWM these hourly rates. All of the attorneys on this case have worked on cases in which clients retained us and paid us and our paralegals on an hourly basis at these rates to pursue their claims, including on commercial matters and on civil rights matters.

15.     Based on my knowledge of the New York City legal market, these are reasonable rates in light of the experience, expertise, and qualifications of these attorneys and paralegals and the prevailing market rates for similarly qualified attorneys and paralegals in New York City.

16.     ECBAWM handles approximately 50% contingency cases (mostly civil rights, including housing discrimination cases) and 50% hourly cases (consisting of employment, occasionally civil rights, and mostly complex commercial cases). ECBAWM did not take this case on a *pro bono* basis to give its attorneys experience or to improve its reputation. ECBAWM took this case intending to recover fees if its client prevailed. ECBAWM would not be able to pay its attorneys, support staff, and overhead costs if it did not prevail in the vast majority of its fee-shifting civil rights cases.

17.     Experienced lawyers Nick Brustin and Mariann Meier Wang declare and certify in their accompanying affirmations that the hourly rates ECBAWM is seeking in this matter are reasonable and consistent with, and even below, the prevailing market standard for attorneys of our levels of experience and expertise. Mariann Meier Wang also declares that the number of hours ECBAWM expended on litigating this matter and the type of work done was

4

reasonable and necessary. Attached here as Exhibit 5 is the Affirmation of Nick Brustin, Esq.; and Exhibit 6 is the Affirmation of Mariann Meier Wang, Esq.

18.    ECBAWM has been recognized by numerous judges for the quality of its civil rights work. For example, in *T.E., et al. v. Pine Bush Central School District, et al.*, No. 12 Civ. 2303 (S.D.N.Y. 2015), Judge Karas praised ECBAWM's expertise in civil rights litigation, stating: "I'll join others who recognize [ECBAWM's] very strong reputation in New York and throughout the country in the work that it does and, in particular, in civil rights work. The civil rights cases include a wide range of cases, including prisoners' rights, police misconduct, students and children's rights, as well as employment and housing discrimination and other constitutional claims." Ex. 7 (Tr.) at 31:1-8; *see also id.* at 39:23-40:2. The transcript from this proceeding is attached as Exhibit 7.[1]  Other publicly available decisions praising ECBAWM's work, awarding us our full hourly rates, and awarding comparable rates to comparable attorneys are cited in our accompanying Memorandum of Law. *See* Pl. Mem. at 11-18.

19.    ECBAWM periodically reviews prevailing legal rates in the New York legal community of firms roughly comparable in size and having attorneys of similar skill, experience, and standing.

**Background and Qualifications of ECBAWM Attorneys**

Diane L. Houk

20.    I joined ECBAWM in 2009 after 24 years in the field of fair housing law, including 6 years of private law practice in Milwaukee, Wisconsin; 13 years at the Civil Rights Division of the U.S. Department of Justice in Washington DC; and 5 years as the co-founder and executive director of FHJC, the plaintiff in this action. Since joining ECBAWM, I have spent

---

[1]    The names of our clients have been redacted from this transcript because they were minors and the proceeding was an infant compromise hearing conducted in a sealed courtroom.

approximately 80% of my time representing plaintiffs in housing discrimination cases in federal court.

21.     I received my J.D. from Columbia School of Law in 1983 and taught a housing discrimination law seminar at Columbia Law School from 2005 until 2014, as well as the Civil Rights Tutorial for Stanford University's Stanford in Washington Program for the prior six years. I have taught CLE programs for many years, including most recently for the Practicing Law Institute (2018-2022) and FHJC's Annual Fair Housing Law and Litigation Training (2015-2023) hosted by City University of New York School of Law. I have been one of five instructors in a HUD-funded training program for test coordinators working in local fair housing organizations across the country for the past ten years.

22.     I am one of the country's leading fair housing attorneys, with extensive experience in litigating claims in federal court brought pursuant to the Fair Housing Act. During my tenure with the Department of Justice, I litigated over 30 complex housing discrimination cases, including representing the United States for twelve years in the longstanding Yonkers school and housing desegregation case in the Southern District of New York.

23.     I have litigated source of income and disability housing discrimination cases throughout my career. During the 1980s, I represented individual and organizational plaintiffs in housing discrimination cases alleging disability discrimination based on Wisconsin's state fair housing law, which included disability as a protected characteristic prior to enactment of similar federal provisions in 1989. My work in this area continued at the Department of Justice, where I litigated disability-related cases involving the design and construction of inaccessible rental housing, denials of reasonable accommodation requests by housing providers, and harassment of tenants because of their disability. Since joining ECBAWM in 2009, I have

continued to litigate cases brought against landlords and real estate companies based on allegations of source of income and disability discrimination, including *Short v. Manhattan Apartments*, 916 F. Supp. 2d 375 (S.D.N.Y. 2012), the first source of income discrimination case in the State of New York to be litigated through trial. Throughout my career, I have focused my work on discriminatory practices by Section 8 housing voucher programs; private housing providers using federal low-income housing tax credits and other public subsidies to develop and manage below-market rate rental apartments; and local governments' zoning and land use practices that restrict the development of affordable housing.

        24.      My work at ECBAWM has led to numerous favorable decisions and outcomes in housing discrimination cases, including: *CCRHR ex rel. Watson, et al. and FHJC v. PPC Residential, LLC, Parkchester Preservation Management LLC, et al.*, OATH Index Nos. 2245/19, 2246/19 (denying defendant's second motion for summary judgment); *Nat'l Fair Hous. All. et al. v. Redfin Corp.*, No. 20 Civ. 1586 (W.D. Wash. Apr. 29, 2022) (negotiated $4 million settlement); *Nat'l Fair Hous. All. et al. v. Facebook, Inc.*, No. 18 Civ. 2689 (S.D.N.Y. Mar. 29, 2019) (negotiated $2.45 million settlement); *United States v. Bedford Development LLC et al.*, No. 17 Civ. 1533 (S.D.N.Y. Mar. 18, 2019) (as intervenors, negotiated $525,000 settlement for disabled residents); *FHJC v. Town of Eastchester*, No. 16 Civ. 9038 (S.D.N.Y. June 1, 2021) (negotiated settlement including injunctive relief, damages, and attorneys' fees after defendant's motion for summary judgment was denied); *Vilchez v. AVR Realty Co.*, No. 13 Civ. 5522 (S.D.N.Y. Aug. 27, 2015) (court-approved settlement for $1.3 million in damages and attorney fees, as well as extensive retrofit plan for inaccessible housing); *Short v. Manhattan Apartments, Inc.*, 916 F. Supp. 2d 375 (S.D.N.Y. 2012) (court awarded injunctive relief and compensatory damages); *Short v. Manhattan Apartments, Inc.*, No. 11 Civ. 5989, 2013 WL 2477266 (S.D.N.Y.

June 10, 2013) (in same case, court granted plaintiffs over $500,000 in attorney fees and costs); *FHJC v. Edgewater Park Owner's Co-op*, No. 10 Civ. 912, 2012 WL 762323 (S.D.N.Y. Mar. 9, 2012) (denying defendant's motion for summary judgment); *Broadway Triangle Community Coalition v. Bloomberg et al.,* No. 112799/2009, 35 Misc. 3d 167 (N.Y. Sup. Dec. 23, 2011) (granting motion for preliminary injunction to halt housing redevelopment plan; in December 2017 the presiding judge so-ordered the parties' settlement agreement, which included $3.7 million in damages and attorney fees, as well as a multi-year affordable housing redevelopment plan); *FHJC v. Broadway Crescent Realty Inc. et al*, No. 10 Civ. 34, 2011 WL 856095 (S.D.N.Y. Mar. 9, 2011) (denying motion for summary judgment); *Cales v. New Castle Hill Realty*, No. 10 Civ. 3426, 2011 WL 335599 (S.D.N.Y. Jan. 31, 2011) (denying motion to dismiss); *FHJC v. Silver Beach Gardens Corp.*, No. 10 Civ. 912, 2010 WL 3341907 (S.D.N.Y. Aug. 13, 2010) (denying motion to dismiss).

25.     In addition to my fair housing litigation experience, I have policy-related experience. For example, at the Department of Justice I negotiated and implemented the first inter-agency Memorandum of Understanding ("MOU") regarding the fair housing obligations of owners of affordable rental housing throughout the United States financed with federal low-income housing tax credits. The 2000 MOU remains in place more than 20 years later and specifically addresses the duty such owners have not to discriminate against applicants with Section 8 vouchers. After New York City amended its Human Rights Law in 2008 to prohibit "source of income" discrimination, I developed a project funded by the New York Community Trust for the FHJC to provide fair housing training and technical assistance to housing counselors at New York City's 10 homelessness prevention centers, called HomeBase. I also co-

authored a report in 2008 on source of income discrimination in real estate advertising in New York City.

26.     During the almost 15 years I have been at the firm, I have participated as first chair in multiple trials, evidentiary hearings, and mediations; argued in state and federal trial court; and taken the lead both in personally conducting and supervising other attorneys in all aspects of our cases, including countless depositions, discovery disputes, motions, oral arguments, and mediations.

27.     In 2023, I was ranked as one of Lawdragon's 500 Leading Plaintiff Employment & Civil Rights Lawyers. In prior years, I was honored with a Pro Bono Recognition Award by Legal Services NYC, a Public Interest Achievement Award by the Public Interest Law Foundation at Columbia Law School, and a Special Commendation for Outstanding Service by the U.S. Department of Justice's Civil Rights Division.

28.     My current hourly rate is $725 per hour, which ECBAWM's paying clients routinely and customarily pay. My hourly clients have included, among others, non-profit developers proposing affordable rental housing, higher income individuals bringing housing discrimination claims, and, currently, the Federal Housing Finance Agency, for which my hourly rate is $750 per hour.

David Berman

29.     Mr. Berman received his J.D. from Stanford Law School in 2015. During law school, he received the Gerald Gunther Prizes for Outstanding Performance in Torts, Employment Law, and Criminal Procedure: Adjudication. Mr. Berman also completed internships at the Brennan Center for Justice, Debevoise & Plimpton LLP, and the Legal Aid Society. He participated in the Community Law Clinic and served as Online Managing Editor

and Senior Editor for the *Stanford Law and Policy Review* and Lead Article Editor and Member Editor for the *Stanford Journal of International Law*. Mr. Berman also directed research and participated in moot court and pro bono opportunities.

30.     Before joining ECBAWM, Mr. Berman completed clerkships for Judge Allyne Ross of the Eastern District of New York and Judge Cheryl Ann Krause of the Court of Appeals for the Third Circuit.

31.     Since joining ECBAWM in 2017, Mr. Berman has maintained a broad practice encompassing civil rights and commercial matters in federal and state court. He has experience representing individuals and organizations in cases involving housing discrimination, false arrests, malicious prosecutions, and use of excessive force by police and correctional officers, the abuse of children and persons with disabilities, First Amendment free speech, and other constitutional questions at both the trial and appellate level. His commercial practice involves real estate and land use disputes, intellectual property disputes, commercial arbitrations, and civil RICO matters. He has served as co-lead counsel at two trials in the United States District Court for the Southern District of New York, and one commercial arbitration, including drafting all motions in limine and proposed jury instructions; delivering opening argument, and examining multiple fact and expert witnesses on both direct and cross-examination. Mr. Berman was part of the ECBAWM legal team that negotiated a historic $2.45 million settlement with Facebook to change the operation of its online advertising platform for housing, employment, and credit advertisements in *Nat'l Fair Hous. All. et al. v. Facebook, Inc.*, No. 18 Civ. 2689 (S.D.N.Y. Mar. 29, 2019).

Sonya Levitova

32.     Ms. Levitova received her J.D. from the City University of New York School of Law in 2020, where she served as Managing Articles Editor and Staff Editor for the CUNY Law Review, and as Vice President of Student Government. Ms. Levitova was the recipient of the Graduate Fellowship, a full scholarship based on academic success and commitment to public interest. She interned with ArchCity Defenders in St. Louis, Missouri, and worked at ECBAWM as a summer associate, where she drafted a memorandum on disparate impact discrimination burdens of proof. Ms. Levitova also conducted research for multiple professors and participated in the Immigrant and Non-Citizen Rights Clinic and Creating Law Enforcement Accountability & Responsibility Project, where she advocated for clients facing delays in their naturalization and clients imprisoned at Guantánamo Bay.

33.     Before joining ECBAWM as an associate, Ms. Levitova completed clerkships for Magistrate Judge Sarah Netburn of the Southern District of New York and Judge Jane B. Stranch of the Sixth Circuit Court of Appeals.

34.     Ms. Levitova previously worked at ECBAWM as the recipient of a Justice Catalyst Fellowship. She was a member of the legal team that represented over 1,600 people incarcerated at the Metropolitan Detention Center during the eight-day power outage in the winter of 2019, in *Scott et al. v. United States*, No. 19 Civ. 1075 (E.D.N.Y.). ECBAWM negotiated an approximately $10 million settlement in the case.

35.     Ms. Levitova received her B.A. from Yale University.

36.     Ms. Levitova recently joined this case in light of Mr. Berman's temporary parental leave and has expended the time necessary to familiarize herself with the underlying facts, law, and documents required to prepare this motion.

Other ECBAWM Attorneys

37.    The other ECBAWM partners and associates who provided limited assistance on this case are similarly qualified. Their background is summarized on our website: https://ecbawm.com/people/. We can provide additional information at the Court's request.

38.    As an exercise of my billing discretion, we are not seeking to recover: (a) the time spent by any attorney who spent less than three hours total on this matter; (b) time attorneys not on the trial team spent attending the trial and conferring with the trial team; (c) any time spent reviewing press and responding to press inquiries; (d) 50% of time billed by summer associates on the case, even though summer associates did legal research that was used in the case; (e) 50% of all time ECBAWM attorneys and paralegal spent traveling. *See* Ex. 2. All of this time was contemporaneously entered into our system (*see* Ex. 1) and was necessarily incurred in order to successfully prosecute this matter, but I have exercised my billing discretion to discount it for purposes of this fee application (*see* Ex. 2).

39.    As described above, we are not seeking to recover time spent related to Plaintiff Alfred Spooner's settlement. *See* Ex. 2. All of this time was contemporaneously entered into our system (*see* Ex. 1) and was necessarily incurred. We have denoted the time spent in Exhibit 1 by redacting relevant entries in their entirety.

40.    We are not seeking to recover fees and costs associated with certain expert discovery that was necessitated by an error in Defendants' expert's report. We have reached an agreement with Defendants' counsel for payment of those fees and costs and have deducted the time spent from our summary of fees sought. *See* Ex. 2.

41.     We are not at this time seeking to recover fees associated with Defendants' pending appeal, including their unsuccessful motion for a partial stay pending appeal, but reserve the right to do so at a later date.

42.     I have reviewed the time records documenting the time spent by myself and other ECBAWM attorneys on litigating this case and certify that the records reflect the work reasonably and necessarily performed by ECBAWM attorneys in connection with this case.

ECBAWM Paralegals

43.     ECBAWM paralegals worked over 460 hours on this case through November 9, 2023, the business day before the day this application was made.

44.     The current paralegal assigned to this case is Toby Shore; before her, the primary paralegal on the case was Jocelyn Rodriguez; other ECBAWM paralegals assisted on the case prior as needed when the workload was too much for a single paralegal.

45.     Ms. Shore's and the other ECBAWM paralegals on this case keep track of their time using the same computer program that ECBAWM attorneys use as described above. Their time is reflected in the contemporaneous time records submitted here as Exhibit 1 and is summarized in Exhibit 2.

46.     ECBAWM paralegals were instrumental in transcribing testers' audio recordings; saving, uploading, organizing, and managing all of the documents produced by Plaintiff, Defendant, and third parties; preparing exhibits and binders for the depositions; cite-checking the memoranda of law and preparing the associated exhibits for all motion practice in this case; preparing and organizing trial exhibits, and managing the exhibits at trial; handling logistics related to witnesses for trial; and many other related tasks essential to our ability to conduct the trial in this matter and the discovery and litigation leading up to the trial. Having

paralegals perform these tasks helped reduce the fees, because it would have been more costly for ECBAWM attorneys to do them.

47.    I have reviewed the time records documenting the time spent by the ECBAWM paralegals on assisting in the litigation of this case and certify that the records reflect the work reasonably and necessarily performed by them in connection with this case.

**The Hours Expended by ECBAWM on This Case Are Reasonable**

48.    As set forth in detail in ECBAWM's contemporaneous time records (attached here as Exhibit 1) and as explained in detail *infra*, the hours expended in litigating this case are reasonable and were necessary to obtain the favorable outcome achieved by ECBAWM's team of attorneys and paralegals.

**ECBAWM's Work on This Case**

49.    ECBAWM has represented Plaintiff Fair Housing Justice Center in this case since January 2018.

50.    As explained in detail below, the litigation in this matter was hotly contested and there were numerous motions over the course of the last five years. Trial involved the calling of adverse witnesses and was adjourned partway through for eight months. This case involved complex and novel disparate impact theories of disability and source of income discrimination under the Fair Housing Act and New York City Human Rights Law (NYCHRL), as well as a theory of intentional source of income discrimination under the NYCHRL. The hours expended are especially reasonable considering the broad scope of alleged discrimination by a management company over multiple years involving approximately 6,000 rental units; the quantity of Defendants' records maintained only in paper form and not electronically; the extensive expert discovery required; and the considerable motion practice before trial. See *infra*.

14

Researching and Preparing the Complaint and Amended Complaint

51.    ECBAWM filed the complaint in this case on February 21, 2018. *See* ECF No. 1.

52.    Prior to filing the complaint, we met with clients Alfred Spooner and FHJC staff; reviewed FHJC's testing investigation documents and recordings; reviewed FHJC's files regarding prior discrimination complaints received about Defendants; conducted legal research to evaluate possible theories of liability, applicable statutes, and forums; collected and analyzed information from third party sources such as the Center for Independent Living in New York and other nonprofits and government agencies with information about rental subsidy and voucher programs; and reviewed program and demographic data regarding income, disability, and various rental subsidy programs.

ECBAWM Prevails on Defendants' Second Motion to Dismiss

53.    In response to the first motion to dismiss Defendants filed, ECBAWM drafted an amended complaint, then successfully defended that complaint against Defendants' second motion to dismiss. This required ECBAWM to research each issue identified by Defendants in their motion and draft a memorandum of law in opposition to the motion. District Judge Forrest denied the motion, finding that the amended complaint sufficiently pled facts to raise an inference of both disparate impact and intentional discrimination. ECF No. 44 (July 9, 2018 Tr.) at 3-4.

ECBAWM Conducts Necessary Fact Discovery into Defendants' Discrimination

54.    ECBAWM drafted interrogatories and document requests for response by Defendants. In response to Defendants' answers, ECBAWM prepared a written list of discovery deficiencies and engaged in an ongoing process of meeting and conferring with opposing

counsel. ECBAWM attorneys and paralegals spent several days at Defendants' corporate office in New Rochelle, New York, to review and copy tenant files that were only available in a physical format. This detailed review produced critical information about Defendants' rental policies and practices at seven of Defendants' buildings that had been tested by FHJC.

55.    ECBAWM met with FHJC to identify information and documents in response to discovery requests propounded by Defendants. In addition to drafting answers to those requests, ECBAWM prepared a privilege log and drafted a discovery protective order.

56.    ECBAWM paralegals created draft transcripts of FHJC's tester recordings and then met with each tester to listen to the recordings one at a time to finalize them. As a result of this careful review process, Defendants did not object to the accuracy of any of Plaintiff's transcripts, all of which were used at trial.

57.    ECBAWM prepared for and took the depositions of five of Defendants' fact witnesses, including Philip Goldfarb and his cousin, who operate Goldfarb Properties.

ECBAWM Participates in Multiple Settlement Negotiations

58.    ECBAWM drafted a written settlement demand including injunctive relief, damages and fees and prepared a settlement statement for two settlement conferences conducted by Magistrate Judge Wang. ECBAWM attorneys attended the two settlement conferences and, throughout litigation, participated in multiple telephone and in-person settlement negotiations with Defendants' counsel.

ECBAWM Engages a Critical Expert Witness and Deposes Defendants' Expert

59.    FHJC retained Dr. Justin Steil as its testifying expert in this case. Dr. Steil testified by a 56-page written affidavit and was cross-examined and testified on rebuttal at trial.

60.    Prior to trial, ECBAWM worked with Dr. Steil to prepare an Excel spreadsheet of data based on Goldfarb's rental records and to provide him with deposition transcripts and other documents he requested to prepare his first report. ECBAWM attorneys then prepared for and defended Dr. Steil at his first deposition.

61.    ECBAWM also prepared for and took the deposition of Defendants' expert. At his first deposition, Defendants' expert conceded that Dr. Steil's analysis of the adverse impact of Defendants' 2015 Policy based on HUD and census data was correct, and he offered an additional analysis based on Defendants' rental records that was rejected by the Court at trial.

ECBAWM Opposes Defendants' Declaratory Judgment Act Counterclaim, Including Briefing and Expert Discovery

62.    At the close of discovery and using information obtained through discovery, ECBAWM attorneys drafted a second amended complaint to incorporate additional factual allegations regarding both FHJC's disparate impact and intentional theories of liability.

63.    In response to this complaint, Defendants filed a counterclaim under the Declaratory Judgment Act seeking a judgment in favor of its 2019 Policy and attorneys' fees from FHJC. ECBAWM researched and drafted a memorandum of law in support of a motion to dismiss the counterclaim and a reply in response to Defendants' opposition brief. The Court agreed that Defendants could not invoke the FHA's fee-shifting provision by prevailing on their counterclaim under the Declaratory Judgment Act and that the counterclaim raised issues beyond the scope of FHJC's operative complaint. *See* ECF No. 117. The Court reserved for trial the question of the 2019 Policy's legality and adequacy as a remedy. *See id.*

64.    In support of their counterclaim, Defendants produced a supplemental expert report. Upon evaluation of that report, Dr. Steil identified fundamental errors by

17

Defendants' expert and drafted a rebuttal. In response, Defendants' counsel sought consent from ECBAWM to retract their expert's report and issue a new report based on corrected data. ECBAWM agreed to avoid protracted discovery litigation before the Court and sought and obtained agreement from Defendants' counsel that fees and costs related to work done in response to the erroneous report would be paid by Defendants.

65.     Defendants then produced a second supplemental report, Dr. Steil drafted a rebuttal report, and ECBAWM took one additional related fact witness deposition and deposed Defendant's expert regarding his opinions about the 2019 Policy. ECBAWM also prepared for and defended Dr. Steil in a second deposition.

ECBAWM Extensively Prepares for Trial and Provides Excellent Representation at Trial

66.     In preparation for a bench trial, ECBAWM met with six fact witnesses and drafted trial affidavits with relevant exhibits for each witness, including the FHJC employee who designed and implemented FHJC's testing investigation. The testimony provided in written form by the testers was so credible that Defendants chose not to cross-examine them at trial and only asked a handful of questions of the test coordinator.

67.     The FHJC trial affidavits also included one by Fred Freiberg, FHJC's Executive Director at the time of the organization's investigations of Goldfarb's rental policies and practices. ECBAWM met several times with Mr. Freiberg to prepare his 17-page affidavit and accompanying exhibits. When Defendants raised objections to portions of Mr. Freiberg's written testimony, ECBAWM attorneys negotiated a partial resolution of the dispute with agreed upon redactions by the parties. At trial, based in part on written briefing submitted to the Court, ECBAWM obtained a favorable ruling on Mr. Freiberg's affidavit, which was admitted into

evidence. The Court awarded the total amount of compensatory damages sought by FHJC through Mr. Freiberg's testimony.

68.    Prior to trial, ECBAWM drafted a motion in limine, proposed findings of fact and law, a proposed injunction, and a pre-trial memorandum of law.

69.    Before each of the two parts of the bench trial, ECBAWM attorneys met with FHJC's fact witnesses to prepare for trial and drafted outlines for adverse and cross-examination of Defendants' fact and expert witnesses.

70.    Trial was conducted in two portions in February and October 2022 for a total of approximately four days. In addition to producing six fact witnesses and one expert witness, ECBAWM attorneys conducted in-person adverse exam of five fact witnesses and cross examination of one expert. For rebuttal, ECBAWM attorneys called FHJC's expert Dr. Steil for additional testimony and two fact witnesses.

Post-Trial Memoranda and Submissions

71.    Following trial, ECBAWM drafted proposed findings of fact and law based upon the trial transcript, a revised injunction order, and a post-trial memorandum of law on liability, damages, and injunctive relief.

72.    ECBAWM attorneys and paralegals have also drafted the motion for attorneys' fees and costs that this affidavit accompanies, along with a summary of work performed, a chart of costs based on invoices retained by the firm, and a memorandum of law in support of the motion. ECBAWM also obtained supporting affidavits for this motion from Attorneys Nick Brustin and Mariann Wang.

**The Costs Expended Are Reasonable, Necessary, and Compensable**

73.    ECBAWM paid a total of $40,128.22 in costs for Plaintiff FHJC through November 9, 2023, the business day before the filing of this application, that were necessary to the litigation of this case. *See* Ex. 3.

74.    The costs sought by Plaintiff for ECBAWM are routinely charged by ECBAWM to its hourly paying clients in civil rights and commercial litigation.

75.    Those costs include the court filing fees; court reporting and transcript costs for the depositions; travel for Plaintiff's counsel to review documents available only in a physical format; Westlaw charges for legal research; delivery and photocopy charges; and taxis (particularly during the trial).

76.    A chart documenting all of these charges is attached here as Exhibit 3.

77.    As noted above, ECBAWM is not seeking costs associated with certain expert discovery that was necessitated by an error in Defendant's expert's report. We have reached an agreement with Defendant's counsel for payment of these fees and costs and have deducted them from our summary of costs sought. *See* Ex. 3.

78.    The underlying invoices and receipts for each of the costs listed in Exhibit 3 are maintained at ECBAWM's offices and are available at the Court's request.

79.    I have reviewed Exhibit 3 and certify that it reflects the actual costs that were reasonably and necessarily incurred by ECBAWM in connection with this case.

**Conclusion**

80.    In sum, Plaintiff is entitled to $1,363,616.00 in attorneys' fees and $40,128.22 in costs for ECBAWM through January 17, 2023, for a total of $1,403,744.22.

81.    We reserve the right to supplement this fee application to include additional attorneys' fees and expenses incurred, including in filing our reply on this motion, in enforcing the judgment against Defendant, in any further post-trial motion practice, and in defending against Defendants' filed appeal and any others they may file.


Dated: November 13, 2023
        New York, New York


                                          _____/s/_____
                                          DIANE L. HOUK