UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FAIR HOUSING JUSTICE CENTER,

Plaintiff,

– *against* –

PELICAN MANAGEMENT, INC.,
FORDHAM ONE COMPANY, LLC, *and*
CEDAR TWO COMPANY, LLC.,

Defendants.

---

**AMENDED OPINION & ORDER**

18 Civ. 1564 (ER)

Ramos, D.J.:

Pelican Management, Inc., Fordham One Company, LLC, and Cedar Two
Company, LLC (collectively "Defendants"), are the owners of rental buildings in New
York City.  Fair Housing Justice Center, Inc. ("FHJC") brought this action on February
21, 2018 alleging that Defendants' 2015 Policy (the "2015 Policy") requiring that all
prospective renters in their buildings earn an annual income of at least 43 times their total
monthly rent was unlawful under both the Fair Housing Act (the "FHA") and New York
City Human Rights Law ("NYCHRL").[1]  FHJC filed a first amended complaint ("FAC")
on June 4, 2018, Doc. 36.  In January 2019, Defendants adopted a new minimum income
policy (the "2019 Policy").  FHJC filed a second amended complaint ("SAC") on July 2,
2019, Doc. 86.  On July 23, 2019, Defendants filed an answer to the SAC and asserted a
counterclaim seeking a declaration that the 2019 Policy was lawful.  Doc. 94.

After presiding over a bench trial in this action, on September 29, 2023, the Court
issued findings of fact and conclusions of law finding in favor of FHJC on each of its

---

[1] The complaint was originally filed by both FHJC and an individual named Alfred Spooner.  On May 2,
2019, the parties filed a stipulation of dismissal of all claims by Spooner with prejudice.  *See* Doc. 75.  The
original complaint was against Cedar Two Company, LLC., Deegan Two Company, and Goldfarb
Properties, Inc. (the "Original Defendants").  Deegan Two Company and Goldfarb Properties, Inc. were
replaced by Pelican Management, Inc. and Fordham One Company in the second amended complaint.
Doc. 86.

claims against Defendants:  disability discrimination under the Fair Housing Act ("FHA") and the New York City Human Rights Law ("NYCHRL"), and source of income discrimination under the NYCHRL.  Doc. 172 (the "Opinion") at 29, 30, 36.  The Court also found against Defendants on their counterclaim, which sought declaratory judgment, holding that the 2019 Policy was not lawful as to its requirements for applicants with partial rental subsidies.  *Id.* at 40.  The Court awarded FHJC all of its requested relief: $240,540 in compensatory damages, $750,000 in punitive damages, and an injunction prohibiting Defendants from, among other things, applying minimum income requirements to applicants with rental subsidies or vouchers.  *Id.* at 42, 48.

On October 10, 2023, Defendants filed a notice of appeal of the Opinion and injunction with the Second Circuit.  Doc. 178.  On October 27, 2023, Defendants filed an emergency motion for a partial stay pending appeal of the injunction, "insofar as the [injunction] prohibits [d]efendants from applying minimum income standards to partially subsidized applicants."  Doc. 183 at 1.  On November 3, 2023, Defendants filed a motion requesting that the Court recognize a supersedeas bond of $1,099,500 obtained by Defendants, and that it approve a stay of execution on the Court's damages awards pending appeal, pursuant to Federal Rule of Civil Procedure 62.  Doc. 188.  On November 6, 2023, the Court denied the motion for a partial stay pending appeal, Doc. 190, and on November 14, 2023, it entered an order approving the supersedeas bond and staying execution of the judgment pending appeal.  Doc. 198.

On November 13, 2023, FHJC filed the instant motion for attorneys' fees and costs expended in litigating this case.  Doc. 194.  On December 15, 2023, Defendants filed their opposition to the motion.  Doc. 203.  On January 5, 2024, FHJC filed its reply, Doc. 204, in which it supplemented its fee request to include fees and costs associated with the instant motion.  *See* Doc. 204 at 1 n.1.

On January 21, 2025, the Second Circuit issued a summary order affirming the Opinion; the mandate issued on February 11, 2025.  Doc. 207.

Pursuant to a stipulation and order entered on February 24, 2025, Doc. 209, on March 4, 2025, FHJC filed a supplemental affirmation in support of its motion for attorneys' fees and costs incurred in opposing Defendants' appeal.  Doc. 210.[2] Defendants filed a supplemental affirmation in response on March 28, 2025.  Doc. 211.

In total, FHJC is claiming $1,535,711.00 in fees and $46,575.61 in costs, for a total of $1,582,286.61.  Doc. 210 ¶¶ 3, 16.  FHJC is represented by Emery Celli Brinckerhoff Abady Ward & Maazel ("ECBAWM"), a litigation boutique that focuses on civil rights, commercial, criminal, and attorney ethics matters.  Doc. 196 at 2.

## I.    LEGAL STANDARD

Both the FHA and NYCHRL permit a fee-shifting award for the "prevailing party"[3] in a civil action.  *See* 42 U.S.C.A. § 3613(c)(2) ("In a civil action under subsection (a), the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee and costs."); New York City, N.Y., Code § 8-502(g) ("In any civil action commenced pursuant to this section, the court, in its discretion, may award the prevailing party reasonable attorney's fees, expert fees and other costs.").  Fee awards under the NYCHRL are determined using the same standards as for similar federal statutes.  *Shannon v. Fireman's Fund Insurance Co.*, 156 F. Supp. 2d 279, 298 (S.D.N.Y. 2001).

"Ordinarily, the starting point for calculating a fee award is the lodestar method, which multiplies the number of hours the prevailing party's attorney expended on the case by the reasonable hourly rate charged for similar work by attorneys of like skill in

---

[2] FHJC notes that, although the billing records it provides with its supplemental filing include the hourly billing rates from 2025, "for consistency and efficiency, [FHJC is] discounting [its] request for attorney fees in this case by basing all of [its] calculations on [ECBAWM's] lower 2023 hourly billing rates that [FHJC] used in [its] original motion for fees in this case."  Doc. 210 ¶ 8.

[3] "[T]he question of whether a plaintiff is a 'prevailing party' within the meaning of the fee-shifting statutes is a threshold question that is separate from the question of the degree to which the plaintiff prevailed." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 757 (2d Cir. 1998).  As further discussed below, the parties contest the degree to which FHJC prevailed in the instant case; however, Defendants do not contest that FHJC is the "prevailing party."

the jurisdiction." *Marchuk v. Faruqi & Faruqi LLP*, 104 F. Supp. 3d 363, 366 (S.D.N.Y. 2015); *see also Millea v. Metro-North Railroad Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (citation omitted) ("Both this Court and the Supreme Court have held that the lodestar . . . creates a 'presumptively reasonable fee.'"); *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)) ("The starting point for the determination of a reasonable fee is the calculation of the lodestar amount.").  The lodestar is calculated based on "prevailing market rates," those "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Reiter v. MTA New York City Transit Authority*, 457 F.3d 224, 229, 232 (2d Cir. 2006) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)).

However, "district courts are afforded considerable discretion in determining the amount of reasonable attorney's fees in any given case." *Hines v. 1025 Fifth Avenue Inc.*, No. 14 Civ. 3661 (SAS), 2015 WL 4006126, at *3 (S.D.N.Y. June 30, 2015); *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 758 (2d Cir. 1998) ("The district court retains discretion to determine, under all the circumstances, what constitutes a 'reasonable' fee."); *Shannon*, 156 F. Supp. 2d at 298 (alteration in original) (citation omitted) ("Both the evaluation of reasonable attorneys' fees and the 'cutting of fees claimed [to be] proper' lie within the sound discretion of the court.").  The Supreme Court has provided that, in exercising discretion, "trial courts need not, and indeed should not, become green-eyeshade accountants.  The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection.  So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Fox v. Vice*, 563 U.S. 826, 838 (2011); *see also Marchuk*, 104 F. Supp. 3d at 367 (internal citations omitted) ("[T]he district court is not obligated to undertake a line-by-line review of [the prevailing party's] extensive fee application.' Rather, it may 'use a percentage deduction as a practical means of trimming fat.'").

The moving party bears the burden "to submit sufficient evidence to support the hours worked and the rates claimed." *Hugee v. Kimso Apartments, LLC*, 852 F. Supp. 2d 281, 298 (E.D.N.Y. 2012); *see also Martinenko v. 212 Steakhouse, Inc.*, No. 22 Civ. 518 (JLR), 2024 WL 5199792, at *2 (S.D.N.Y. Dec. 23, 2024) (citation omitted) ("Requested fees must be supported 'with contemporaneous time records establishing for each attorney for whom fees are sought, the date on which work was performed, the hours expended, and the nature of the work done.'").

## II.    DISCUSSION

In the instant case, FHJC provides that it "is not seeking any upward adjustment in hourly rates or the overall fees sought; it simply seeks the lodestar amount." Doc. 196 at 9.

Defendants do not dispute that FHJC is the prevailing party in this case, nor do they dispute the reasonableness of the hourly rates claimed for the most active attorneys on the case:  partner Diane L. Houk, and associates David Berman and Sonya Levitova. *See* Doc. 195 ¶ 7.  However, Defendants raise various other objections to FHJC's claim for fees and costs.  The Court addresses each objection in turn.

### A.  Reasonableness of Hourly Rates

Defendants dispute the reasonableness of the hourly rates for associate Michelle Yankson and for ECBAWM's paralegals.

#### 1.  Michelle Yankson

Defendants argue that the hourly rate of $550 for associate Michelle Yankson is unsupported, and thus the $20,845 claimed for her work should be deducted from the total fee award, because FHJC provides no information about Yankson's experience or education, nor any evidence that "the work that was assigned to her and the amount of time it took to perform that work was reasonable." Doc. 203 at 5–6; *see also* Doc. 202-5 (Exhibit E).

In response, FHJC provides: "At the time of her ECBAWM employment, Ms. Yankson had prior litigation experience in housing and employment matters, and she had previously clerked for judges on the Court of Appeals for the Third Circuit and the District Court for the Northern District of Ohio." Doc. 204 at 9 (citing Doc. 205 (Houk Reply Affirmation) ¶ 8)). FHJC additionally argues that Yankson "was a valuable member of the team during the difficult and voluminous discovery phase of this case," and that the "hours [she] expended and the rate claimed for her work are reasonable." *Id.*

The Court finds no basis to discount Yankson's hourly rate of $550, which is the same rate billed for associate David Berman, *see* Doc. 195-3 at 2, whose rate Defendants do not contest, and whose experience as described is comparable to Yankson's. *See* Doc. 196 at 13 (describing Berman's "litigation experience in housing discrimination and other civil rights cases," and his district and circuit court clerkships). The Court therefore does not deduct fees claimed for Yankson's work from the award.

### 2. Paralegals

Defendants claim that the hourly rate of $225 for the paralegals on the case should be reduced to $100, arguing that an hourly rate of $100 is consistent with case precedents from this district and that FHJC has not described "the qualifications of the paralegals." Doc. 203 at 8–9. FHJC responds that the ECBAWM paralegals "were qualified, had multiple years of experience, and their work reduced the number of hours attorneys spent in this case." Doc. 204 at 10. It explains that the paralegals "billed 461.6 out of 2626.3 hours spent litigating this case—close to a fifth of the total time," and that their work, such as on discovery-related tasks,[4] was "critical to obtaining far-reaching relief in this novel case." *Id.* at 9, 10.

---

[4] For example, FHJC provides that paralegals, along with ECBAWM attorneys, "spent several days at Defendants' corporate office in New Rochelle, New York, in order to review and copy tenant files that were available only in a physical format." Doc. 196 at 3. Additionally, paralegals "created draft transcripts of FHJC's tester recordings and then met with each tester to listen to the recordings one at a time to finalize them," and "as a result of [this] careful review process, Defendants did not object to the accuracy of any of Plaintiff's transcripts, all of which were used at trial." *Id.*

While some courts in this district have found an hourly rate of $100 to be reasonable for paralegals, others have awarded higher amounts, including upwards of $200. *Compare Casmento v. Volmar Construction, Inc.*, 20 Civ. 944 (LJL), 2022 WL 17666390, at *4 (S.D.N.Y. Dec. 14, 2022) ("The hourly rate for the two paralegals of $100 per hour is consistent with rates approved in this District and also is reasonable.") *and Gardner-Alfred v. Federal Reserve Bank of New York*, No. 22 Civ. 1585 (LJL), 2023 WL 2414951, at *1, *2 (S.D.N.Y. Mar. 8, 2023) (evaluating objection to expenses for three hours of paralegal time, reducing the paralegal's hourly fee from $200 to $100, relying on *Casmento*'s finding that an hourly rate of $100 is reasonable and consistent with precedent) *with Charles v. Seinfeld*, No. 18 Civ. 1196 (AJN), 2022 WL 889162, at *5 (S.D.N.Y. Mar. 25, 2022) (collecting cases) ("Courts in this district generally find that reasonable hourly rates for paralegal and litigation support staff range from $150 to $250."); *Rosario v. City of New York*, 18 Civ. 4023 (LGS), 18 Civ. 4023 (LGS), 2023 WL 2523624, at *3, *5 (S.D.N.Y. Mar. 15, 2023) (awarding the requested $200 hourly rate for paralegals, and stating that "the rates requested for . . . paralegals have ample precedent in cases from this District and Circuit").

Here, the Court finds that an hourly rate of $200 for paralegals' work is reasonable, particularly in light of FHJC's showing that the paralegals' work on this litigation was substantive, extensive, and indispensable. *Cf. Angulo v. 36th Street Hospitality LLC*, No. 19 Civ. 5075 (GDB) (SLC), 2020 WL 4938188, at *18 (S.D.N.Y. July 31, 2020), *report and recommendation adopted*, 2020 WL 4936961 (S.D.N.Y. Aug. 24, 2020) (awarding a paralegal and law clerk an hourly rate of $100, based in part on their "relatively small role in th[e] matter").

### B. Alfred Spooner

As previously discussed, the complaint in this case was originally filed by both FHJC and an individual named Alfred Spooner. *See* Doc. 1. However, on May 2, 2019, the parties filed—and the Court so-ordered—a stipulation of dismissal of all claims by

Spooner with prejudice.  Doc. 75.  As part of the release executed by the parties, Spooner agreed to release the Original Defendants from "any and all claims, demands, causes of action, fees and liabilities of any kind whatsoever," including "any claim for attorneys' fees, costs, expenses or disbursements related to Mr. Spooner's efforts to rent an apartment from the Releasees."  Docs. 202-1 at 1, 202-2 at 1.

In the instant motion, FHJC does not seek to recover fees for "any time spent related to Plaintiff Alfred Spooner's settlement," however it does seek to recover fees for other work related to Spooner, to the extent the work contributed to the broader case. Doc. 196 at 19.  Specifically, FHJC "is seeking to recover fees for time spent investigating Defendants' refusal to rent to Mr. Spooner and using the facts learned during discovery and at trial."  *Id.*  FHJC explains:  "Plaintiff offered, and the Court admitted, facts regarding Mr. Spooner at trial, facts that were part and parcel of Plaintiff's ultimate success. . . . Because Plaintiff's claims and the result achieved were based on a 'common core of facts' regarding a company-wide policy, they necessarily included investigation, discovery, and trial preparation and presentation of Mr. Spooner's circumstances."  Doc. 204 at 3 (quoting *Green v. Torres*, 361 F.3d 96, 98 (2d Cir. 2004)); *see Green*, 361 F.3d at 98 (alterations in original) (internal citations omitted) ("In fixing the lodestar the court may exclude any hours spent on severable unsuccessful claims.  But where . . . the plaintiff's claims 'involve a common core of facts or [are] based on related legal theories,' and are therefore not severable, '[a]ttorney's fees may be awarded for unsuccessful claims as well as successful ones.'").

Defendants argue, however, that "no claim may now be made for counsel fees for any work done for Mr. Spooner in this case."  Doc. 203 at 7.  Defendants state:  "the Release is a general release not limited to the matters in dispute in this action.  No right to apply for counsel fees in addition to the settlement amount paid was reserved.  Mr. Spooner clearly released Defendants from everything he might have claimed."  *Id.*

Based on the language of the release, the Court declines to award FHJC fees for work performed solely on behalf of Spooner.  However, the Court recognizes that, at the time Spooner was still a party to the case, there was work performed on behalf of both plaintiffs which would have been performed even if Spooner had never served as a plaintiff.  Defendants themselves state:  "no reasoned distinction can be made between the work done" for either plaintiff before the date of settlement, because "[u]ntil Mr. Spooner's dismissal as a Plaintiff, every effort of the Plaintiffs' counsel herein was performed on behalf of both Plaintiffs."  Doc. 203 at 8.  The Court determines that a 15% reduction shall be applied to the fees which FHJC claims for its pre-settlement work on the case (from which FHJC has already excluded its work pertaining to the settlement itself).  The Court cannot ascertain based on the current record how much pre-settlement work was performed exclusively on Spooner's behalf, *i.e.*, how much of the pre-settlement work did not in fact contribute to FHJC's presentation and ultimate success at trial; however, the Court exercises its discretion to apply a 15% reduction to the fees from that pre-settlement work, exclusive of work on the settlement itself, to "trim the fat" of work performed only for Spooner or only due to his involvement.[5]  *See Raja v. Burns*, 43 F.4th 80, 87 (2d Cir. 2022) (quoting *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998)) ("[T]he court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application.").

### C. Motion to Dismiss Goldfarb's Counterclaim

On July 2, 2019, pursuant to a stipulation submitted that day, FHJC filed the SAC, Doc. 86.  On July 23, 2019, Defendants answered and asserted a counterclaim seeking a declaration that the 2019 Policy was lawful.  Doc. 94.  On October 15, 2019, FHJC moved to dismiss that counterclaim.  Doc. 107.  On July 24, 2020, the Court denied FHJC's motion.  Doc. 117.  Ultimately, following the bench trial, the Court found against

---

[5] As further discussed below, this 15% reduction to the pre-settlement work additionally serves to "trim the fat" of entries objected to on other grounds.

Defendants' counterclaim, holding that the 2019 Policy was not lawful as to the partial subsidy requirements. Doc. 172 at 48.

Defendants argue that FHJC should not be awarded the $61,195.00 in fees corresponding to time spent "researching, preparing and drafting" that motion to dismiss, given that the Court denied it. Doc. 203 at 11–12; *see also* Doc. 202-7 (Exhibit G). FHJC responds that the motion to dismiss was still "a component of Plaintiff's ultimate success, especially since Defendants sought attorneys' fees from Plaintiff." Doc. 204 a 4. It explains that although, in denying the motion, the Court allowed for Defendants' counterclaim to proceed, it nonetheless "narrowed the relief Defendants could seek by finding that Defendants lacked standing under the FHA and could not invoke its fee-shifting provision to seek attorneys' fees." *Id.* (citing Doc. 117 at 10–13). Moreover, FHJC highlights that, at trial, the Court ultimately "found against Defendants on all claims, including their counterclaim." *Id.*

The Court declines to deduct from the fee award the time FHJC dedicated to the motion to dismiss Defendants' counterclaims. District courts may deny counsel "compensation for work done on motions that were never filed, on claims that were abandoned, on motions that were unreasonable or had little chance of success, and on submissions that failed to comply with court orders." *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 538 (S.D.N.Y. 2008) (internal citations omitted) (collecting cases). They may also decline to award fees for "severable unsuccessful claims." *Quaratino*, 166 F.3d at 425. However, courts are not required to "disallow fees for every motion that a prevailing party did not win." *Rozell*, 576 F. Supp. 2d at 538.

Here, Although FHJC's motion to dismiss was denied by the Court, the record does not indicate that FHJC pursued that motion unreasonably or in any other way undeserving of compensation. *See, e.g.*, *Rozell*, 576 F. Supp. 2d at 538, 539 (awarding plaintiff compensation for several motions which, while unsuccessful, were "part of the routine give and take of litigation" and "hardly unreasonable," and explaining that

"[r]easonable paying clients may reject bills for time spent on entirely fruitless strategies while at the same time paying their lawyers for advancing plausible though ultimately unsuccessful arguments."); *see also Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992) (explaining that, in assessing "whether attorney hours were necessary to the relief obtained," the "relevant issue . . . is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures"). *But see Quaratino*, 166 F.3d at 427, 427 (finding district court did not abuse its discretion in determining that "fees should not be awarded for time spent on [plaintinff's] unsuccessful motion for a new trial").

**D. "Mismanagement"**

Defendants argue that FHJC mismanaged the case by (1) filing the FAC, and (2) preparing witness Kiana Glanton and presenting her testimony at trial. Doc. 203 at 12–14.

*1. Amended Complaint*

FHJC filed its initial complaint on February 21, 2018. Doc. 1. On April 23, 2018, the Original Defendants[6] moved to dismiss the complaint. Doc. 25. FHJC filed its opposition on May 18, 2018. Doc. 33. However, on May 21, 2018, Judge Forrest, to whom the case was originally assigned, granted FHJC leave to file an amended complaint without ruling on Defendants' motion. Doc. 34. On June 4, 2018, FHJC filed the FAC. Doc. 36.

Defendants argue that FHJC could have avoided filing the FAC, as "nothing prevented Plaintiffs attorneys from drafting the Complaint identically to the Amended Complaint." Doc. 203 at 13. They claim that "Plaintiff spent $12,780 amending their Complaint rather than responding to Defendants' Motion to Dismiss." *Id.* at 12; *see also* Doc. 202-8 (Exhibit H). However, Defendants' only purported basis for this conclusory statement is the observation that, in filing the FAC, Plaintiffs removed their "admission"

---

[6] *See supra* n.1.

from the complaint that "Defendants' minimum annual income policy has no adverse impact based on disability on New York City residents generally, only 11% of who are disabled." Doc. 203 at 12.

The Court declines to reduce FHJC's fees based on its work on the FAC, as the record does not reflect that work on the FAC was "inefficient, duplicative, or unnecessary." *Cf. Siegel v. Bloomberg L.P.*, 13 Civ. 1351 (DF), 2016 WL 1211849, at *13 (S.D.N.Y. Mar. 22, 2016) (listing, as examples of "inefficient, duplicative, or unnecessary" work:  internal conferencing for "nonstrategic issues that did not require the involvement of multiple attorneys," "tasks that were only required due to [lawyers'] own carelessness," and "tasks that could have been performed by more junior attorneys"); *Gonzalez v. Fresh Start Painting Corp.*, No. 18 Civ. 11124 (PMH), 2022 WL 3701096, at *4 (S.D.N.Y. Aug. 26, 2022) (emphasis in original) (finding "duplicative and excessive billing" where, for example, overstaffing led to "[d]uplicate and triplicate review of even the most basic documents" and where 21 hours were spent on "review[ing] and respond[ing] to basic discovery demands . . . when Plaintiffs produced *10 pages* of documents and Defendants produced *255 pages*").

### 2.  Kiana Glanton's Testimony at Trial

At trial, FHJC called Kiana Glanton as a rebuttal witness.  Glanton is "a vision impaired woman who submitted a rental application for one of Defendants' properties using a Section 8 voucher."  Doc. 172 at 4.  As the Opinion explains, Glanton's application was denied for "insufficient income," yet she was informed "that she could reapply after 60 days . . . which was after her May 2021 voucher was set to expire."  *Id.* at 12.  However, in submitting her second application, Glanton included the same voucher from her first application, which had since expired; the application was denied on those grounds.  *Id.* at 13.

Defendants highlight the Court's finding that Glanton's second application was properly rejected based on the "insufficient voucher," not based on discrimination, *Id.* at

39, to argue that her "testimony added no value to this case and could have been avoided had her documents been scrutinized before she was presented as a witness." Doc. 203 at 14. Defendants thus argue that the $21,865.00 in attorneys' fees accrued in preparing Glanton for trial should be deducted from the fees award. *Id.*; *see also* Doc. 202-6 (Exhibit F). FHJC responds that "Glanton's testimony strengthened Plaintiff's claims." Doc. 204 at 5. FHJC points to the fact that Glanton's first application was denied for "insufficient income' under the very 2019 Policy at issue during the trial," and also argues that the Court's injunction prohibiting "minimum time periods for rejected applicants to reapply" was "directly linked" to Glanton's testimony about her second application being denied for "insufficient voucher." *Id.*

The Court disagrees with Defendants' argument that Glanton's testimony "added no value to this case," and it finds no case mismanagement that would warrant a fee reduction. The Court thus declines to reduce the fee award based on FHJC's work preparing Glanton for trial.

### E.  General Success

"'[T]he most critical factor in determining a fee award's reasonableness 'is the degree of success obtained,'" because "if 'a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount.'" *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (quoting *Hensley*, 461 U.S. at 436). However, "there is no requirement of proportionality" between a party's monetary recovery in litigation and the attorneys' fee award; this is particularly salient in the civil rights context, where "a successful civil rights plaintiff often secures important social benefits that are not reflected in nominal or relatively small damages awards." *Baird v. Boies, Schiller & Flexner LLP*, 219 F. Supp. 2d 510, 520 (S.D.N.Y. 2002) (quoting *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986)).

Defendants claim that FHJC's "degree of success achieved in the instant matter does not entitle [it] to the full award . . . requested." Doc. 203 at 14. They argue that one of FHJC's "main objectives" in the case was to establish "that landlords may not, as a matter of law, assess the income and ability to pay rent of partially subsidized applicants." *Id.* at 15, 16. Defendants claim FHJC failed at this objective, because the Court found that "it is not unlawful for a landlord to ask about income or assess an applicant's ability to pay for housing, so long as they do not discriminate based on the subsidy, a lawful source of income." *Id.* at 15 (quoting Doc. 172 at 36). Additionally, Defendants argue, "Plaintiff failed to establish a permanent prohibition against Goldfarb using [its income test], since the injunction Order is limited to five years." Doc. 203 at 16. Therefore, Defendants claim, "Plaintiff did not achieve complete success at trial and its counsel fees should be reduced accordingly." *Id.*

The Court disagrees. As FHJC asserts:

> Plaintiff's operative complaint set forth three claims against Defendants: disability discrimination under the Federal Housing Act (FHA); disability discrimination under the New York City Human Rights Law (NYCHRL); and source of income discrimination under the NYCHRL.

Doc. 204 at 2 (citing Doc. 86 ¶¶ 96–115). The Court found for Plaintiff on all three claims. Doc. 172 at 29, 30, 36. Moreover, the Court awarded Plaintiff all of the relief it requested—compensatory and punitive damages, as well as injunctive relief. *Id.* at 42, 48.[7] FHJC therefore "obtained excellent results," and "[i]n these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Hensley*, 461 U.S. at 435.

The Court thus declines to reduce the fee award based on FHJC's general success in the case.

---

[7] The Court additionally issued declaratory relief, finding against Defendants' counterclaim—which sought a declaration that the 2019 Policy was lawful—in holding that the 2019 Policy was unlawful as to its requirements for applicants with partial rental subsidies. *Id.* at 40.

### F.  Vague Time Entries, 0.1-Hour Entries, and Clerical Tasks

Defendants argue that FHJC's fee application includes time entries that (1) are vague and therefore "inadequately identify what work was done," (2) unreasonably billed for 0.1 hour, and/or (3) reflect "clerical and administrative tasks" that should not be remunerated at hourly rates.  Doc. 203 at 16, 17, 18.

1.  *Vague Entries*

"Courts may reduce the number of hours in a fee application where the time entries submitted by counsel are too vague to sufficiently document the hours claimed." *Barclays Capital Inc. v. Theflyonthewall.com*, No. 6 Civ. 4908 (DLC), 2010 WL 2640095, at *4 (S.D.N.Y. June 30, 2010) (citing *Kirsch*, 148 F.3d at 172–73).

Defendants claim that FHJC's "time records contain numerous vague entries," which "provide no context to the work actually done on behalf of the client and should be reduced or entirely discounted."  Doc. 203 at 17.  Defendants list the following entries as examples:  "Emails with D. Houk regarding:  matter"; "Draft email to Berman regarding next steps"; and "Meet with DBerman regarding next steps."  *Id.* (quoting Doc. 195-1 at 3, 4); *see also* Doc. 211-11 (Exhibit J).[8]  They additionally point to entries that are only partially vague, such as the entry providing, "Inputting edits to pre-motion letter response (.5); emails with client regarding:  case status (.2)," for which Defendants only object to the second part, "emails with client regarding:  case status (.2)."  *Id.*  Defendants also claim that certain redacted entries, those which "prevent the reader from reasonably understanding the entry," are vague.  *Id.*[9]

FHJC argues that "it would be unreasonable to expect detailed descriptions of every internal email sent and phone call made during this five-year-old litigation."  *Id.*

---

[8] Exhibit J compiles the time entries that Defendants object to in whole or in part on vagueness grounds. *See* Doc. 211 ¶ 12.

[9] The Court notes that certain entries which appear illegible on Defendants' annotated chart of allegedly vague entries, Doc. 211-11, appear as such due in part to FHJC's redactions, but also due to copying or formatting issues.  For example, while an entry from January 16, 2022 appears as "Research re: [redacted]" on the chart submitted by FHJC, Doc. 195-2 at 29, it appears as "re:   ." on Defendants' annotated chart, Doc. 211-11 at 4.

FHJC argues, moreover, that many of its entries are "clear in context"; for example, where an entry referring to "next steps," was made "a week after the initial complaint was filed and on the same day summons were returned as executed," FHJC argues "[i]t is reasonable for a supervising attorney to write an email about the next steps to be taken after summons are filed with the court." *Id.*  As to the redactions, FHJC argues that "[r]edacting time entries for attorney-client and work product privilege does not inherently render them vague." *Id.* at 7 n.4.[10]

The Court observes that some of FHJC's time entries do contain vague entries, such as those referencing emails and calls regarding "next steps" without any additional context.[11] *See, e.g. Trustees of Bricklayers & Allied Craftworkers Loc. 5 New York Retirement v. Helmer-Cronin Construction, Inc.*, No. 3 Civ. 748 (MDF), 2005 WL 3789085, at *5 (S.D.N.Y. Oct. 24, 2005) (finding entries such as "Study and Review file," "Telephone call with client," "Letter to Silkey," and "Research" were "vague and d[id] not provide any indication as to the subject matter of the telephone calls, letters, research, and documents reviewed.").  On the other hand, some of FHJC's entries regarding short emails, which Defendants have objected to on vagueness grounds, do provide sufficient substance, for example:  "Emails with J. Rodriguez re:  Suggs subpoena," "Emails w/ team re-Moot," and "Email to court re:  trial exhibits."  Doc. 211-11 at 4.  Further, the Court agrees with FHJC that entries redacted based on privilege are not inherently vague, and that certain entries that appear vague on their face may, in context, "sufficiently document the hours claimed."[12]  *Wise v. Kelly*, 620 F. Supp. 2d 435, 452 (S.D.N.Y. 2008) (alteration in original) (citation omitted) ("[W]here an attorney's time entries are vague,

---

[10] FHJC additionally offers to "submit unredacted billing records for *ex parte in camera* review by the Court."  *Id.*

[11] *See, e.g.*, Doc. 195-1 at 2 (containing the following entries between January 4 and February 9, 2018: "Email with [redacted] regarding Goldfarb case," "Phone call from Spooner regarding next steps (.20)," "Emails with D. Houk regarding:  matter.").

[12] Relatedly, certain entries that are concise and minimally descriptive, such as "Trial (.5); Travel (1.5)," are nonetheless clear.  *See* Doc. 211-5 at 40.

courts may attempt to decipher them by reference to the 'context in which these entries occur [to determine] what work was involved.'").

Based on the totality of the circumstances, the Court is satisfied that the 15% reduction to the pre-settlement work, *see supra* n.5, accounts for any unreasonably vague entries.

### 2. *Entries for 0.1 Hour*

"Courts in this circuit have found that billing 0.1 hours for each brief, trivial task is an inflationary billing tactic that results in excessive billing." *Cajero Torres v. Sushi Sushi Holdings Inc.*, No. 19 Civ. 2532 (PAE) (RWL), 2022 WL 2788655, at *19 (S.D.N.Y. July 15, 2022) (quoting *Smith v. City of New York*, No. 19 Civ. 6198 (KAM), 2022 WL 939711, at *9 (E.D.N.Y. Mar. 28, 2022) (collecting cases)).

Defendants claim that FHJC's attorneys submitted 183 entries billing just 0.1 hour, and that the "accumulated fees of $9,676 for time billed at 0.1-hour increments" should be deducted from the fee award.[13]  Doc. 203 at 19.  Defendants argue that, based on *Cajero Torres* and *Smith*, "this Court should find that the 0.1-hour entries are excessive, vague, and unlikely to have taken six minutes each, and that they therefore are unreasonably charged." *Id.* at 20; *see Cajero Torres*, 2022 WL 2788655, at *19 (emphasis added) (finding "a *profusion* of entries for one-tenth of an hour for tasks that are unlikely to have taken six minutes"); *Smith*, 2022 WL 939711, at *9 (finding most of the entries for 0.1 hour were too vague for the court to determine "whether the tasks performed [we]re brief and trivial so as to suggest inflationary billing," and thus applying an "across-the-board percentage cut of 15%" based on vagueness).

FHJC argues there were 172 entries billing 0.1 hour, not 183, but "even assuming ECBAWM billed 0.1 hours between 170 and 180 times, this case has been pending for 5

---

[13] In their supplemental affirmation, Defendants add $585.00 to the total amount they propose be deducted for 0.1-hour entries, to account for additional 0.1-hour entries reflected in FHJC's supplemental affirmation. *See* Doc. 211-3.

years; it is reasonable that, over the course of 5 years, 2 attorneys would each bill one-tenth of an hour approximately 18 times per year—or, once or twice a month." Doc. 204 at 8. Moreover, FHJC argues its entries for 0.1 hour were for substantive tasks, such as "emails between attorneys and calls to the client about the case." *Id.*

The Court determines that 170 to 180 entries for 0.1 hour, across five years, is not so inherently excessive as to compel a finding that FHJC attorneys billed their time unreasonably, let alone with an intent to artificially inflate their fees.[14] *Cf. Schoolcraft v. City of New York*, No. 10 Civ. 6005 (RWS), 2016 WL 4626568, at *13 (S.D.N.Y. Sept. 6, 2016) (stating one lawyer "billed 0.1 hours for 267 discrete tasks," another "for 173 tasks," and another "for 182 tasks"); *Cajero Torres*, 2022 WL 2788655, at *19 ("Here, [defendant] notes plaintiffs' counsel—through the aggregation of 0.1-hour time entries—billed more than 18 hours to reviewing court filings and correspondence, more than 16 hours to reviewing emails from the defense, and more than 42 hours in client communications."). Nor does the Court find that FHJC's entries for 0.1 hour tend to be for tasks that inherently "entail trivial effort at best," *Andert v. Allied Interstate, LLC*, No. 12 Civ. 7010 (PAC), 2013 WL 3833077, at *3 (S.D.N.Y. July 17, 2013), or for "mundane tasks such as emailing a document, e-filing, or receiving a notice of appearance or other notification from the Court's [ECF] system." *Schoolcraft*, 2016 WL 4626568, at *13 (noting the "excessive specificity" in billing for these tasks "appear[ed] designed to inflate the total number of hours billed, by attributing a separate 6 minutes to each brief task"). For example, FHJC's 0.1-hour entries include the following: "Updating complaint to reflect social security information"; "Emails with D. Houk regarding: 7/9 call with the court"; "Coordinating with D. Edwards for creating rule 26(f) schedule"; "Reviewing D. Rabinowitz edits to letter to court regarding: discovery schedule"; and

---

[14] The Court recognizes that a handful of additional entries for 0.1 hour were included in the affirmation filed subsequent to this argument; however, the additional $585.00 that Defendants propose deducting for those new 0.1-hour entries does not change the Court's analysis. *See* Doc. 211-3.

"Reviewing Rule 68 offer and emails with D. Houk and M. Yankson regarding: same."
Doc. 195-1 at 3, 5, 17, 21, 33; *cf. Andert*, 2013 WL 3833077, at *3 (finding "many '0.1
hours' entries for tasks that entail trivial effort at best," for example, "a time entry of '0.7
hours' for merely reviewing the receipt of seven ECF confirmation emails, billing 0.1
hours for each ECF email received").

The Court thus declines to reduce the fee award based on FHJC's 0.1-hour entries.

3. *Clerical and Administrative Tasks*

The Second Circuit has provided that:

[W]hile district courts have the legal authority and discretion to either reduce an
attorney's hourly rate for time spent on clerical tasks or apply an across-the-board
reduction to the hours billed or total fee award to account for time spent on
clerical tasks (or block-billed time entries reflecting a mix of clerical and legal
work), a district court is not required to make such reductions.

*Lilly v. City of New York*, 934 F.3d 222, 234 (2d Cir. 2019). "The key inquiry in
determining the reasonableness of an attorney's hourly rate and hours billed is whether a
paying client would be willing to pay the fee," and "[a]s with all aspects of our fee-
shifting jurisprudence," district courts are afforded "broad discretion in awarding
attorneys' fees because they are much closer to the details of each individual case and can
better determine what is reasonable and appropriate in the fee calculus for the particular
case." *Id.*

Defendants argue that FHJC should not be awarded legal fees for any clerical
tasks, because clients should not be expected to pay hourly rates for such tasks. Doc. 203
at 18 (quoting entries in Doc. 195-1 at 23); *see, e.g., Lilly*, 934 F.3d at 234 ("[I]t is highly
unlikely that a paying client would agree to pay any person $450 for an hour of sending
and receiving faxes, calling medical offices, and delivering papers[.]"); *Ng* v. *King Henry
Realty, Inc.*, 16 Civ. 13 (PAE) (JCF), 2016 WL 6084074, at *8 (S.D.N.Y. Oct. 7, 2016)
(quoting *Bridges* v. *Eastman Kodak Co.*, 91 Civ. 7895 (RLC), 1996 WL 47304, at *7
(S.D.N.Y. Feb. 6, 1996), *aff'd,* 102 F.3d 56 (2d Cir. 1996)) ("Serving papers is considered
a purely clerical task that is not compensable, even at paralegal rates, because it is

19

'normally subsumed into an attorney's overhead expenses.'"). Defendants argue that FHJC entries such as "[p]reparing deposition exhibits" and "[p]rinting exhibits and putting them into folders for deposition" reflect clerical tasks. Docs. 203 at 18; *see also* Doc. 211-10 (Exhibit I).[15]

FHJC responds that courts are not *required* to reduce a fee award based on time spent on clerical tasks, Doc. 204 at 6 (citing to *Lilly*, 934 F.2d at 234). In any event, FHJC argues that the tasks identified by Defendants as "clerical" were "substantive tasks necessary to this litigation," and they were oftentimes performed by "ECBAWM's highly qualified paralegals," thereby lessening the amount of time attorneys billed for such tasks. *Id.*

The Court finds that, although some of the entries Defendants have identified as clerical involve non-substantive tasks such as delivering papers or scheduling meetings,[16] the vast majority are the kinds of substantive and/or essential tasks that a paying client would deem compensable.[17] Moreover, the Court has conducted a line-by-line review of the entries that Defendants have identified as "Clerical Partial," Doc. 211-10 at 5–6, and found few clerical tasks included in those entries, with some entries containing none. To account for any tasks for which a client would reasonably contest the hourly rates billed, however, the Court determines that the entries Defendants have identified as clerical in their entirety, *see id.* at 1–6, are to be compensated at the hourly rate of $200, the rate this Court is applying to paralegals' work on this case. The Court applies no reduction to the hourly rate billed for the entries identified as "Clerical Partial." *See id.* at 6–7.

---

[15] Exhibit I compiles the time entries that Defendants object to in whole or in part on grounds that they reflect clerical work. *See* Doc. 211 ¶ 11.

[16] For example, the following entries are included: "Delivering docs to opp-counsel," "Linked zoom account to generate meeting for witness prep session. Sent out calendar invite," "Went down to the courthouse to pick up trial binder boxes," and "overseeing filing of [motion to compel]." Doc. 202-9 at 2, 6, 7.

[17] For example, Defendants object to the following entries as clerical: "Phone call with court regarding: briefing schedule," and "Substantive proof of 2d Cir. brief." Docs. 211-4 at 3, 211-5 at 56.

### G.  Post-Opinion Objections

In their supplemental affirmation, Defendants identify four new objections to billing entries for which FHJC is claiming fees:  "Involvement with Amicus," "Extra Travel," "Work already being compensated under Court's injunctive relief," and "Unrelated Work and Blurb Drafting for Website."  *See* Doc. 211-3.  Defendants additionally object to at least one entry as "not related to proceeding."  *See* Doc. 211-5 at 53.  Based on the current record, it is not clear why work relating to the amicus and travel for the case would not be compensable.  As for the other categories, it is not readily apparent that the objected-to entries are necessarily excludable based on the identified grounds.  For example, it is not clear how compensating FHJC for the entry "Review and draft notes to FHJC re:  new policy issues" would necessarily constitute "duplicative compensation" to the injunctive relief.  *See* Doc. 211-5 at 52.  The Court is satisfied that the 15% reduction to the pre-settlement work, *see supra* n.5, accounts for any potential billed-for work that was not in fact related to the legal proceeding—the underlying litigation or the appeal.

## III.    CONCLUSION

In sum, the Court provides for the following adjustment and deductions to FHJC's claim for fees and costs:

- The hourly rate for time billed by paralegals is reduced to $200;
- Entries identified by Defendants as "Clerical" in their entirety, in Doc. 211-10 at 1–5, are to be compensated at the hourly rate of $200;
- A 15% reduction shall be made to the fees which FHJC claims for its pre-settlement work on the case, to account for pre-settlement work performed solely on Spooner's behalf, any unreasonably vague entries, and any work unrelated to the litigation.

The Court does not, however, provide any deductions relating to the following categories:

- Michelle Yankson's work, billed at an hourly rate of $550;
- Work on FHJC's motion to dismiss Defendants' counterclaim;
- Work on FHJC's FAC;
- Work preparing or otherwise relating to trial witness Kiana Glanton;

- FHJC's general success in this litigation;
- Entries billed for 0.1 hour;
- Entries identified by Defendants as "Clerical Partial," in Doc. 211-10 at 5–6.

FHJC is directed to submit an amended fee application, incorporating the Court's findings, by April 7, 2025.

The Clerk of Court is respectfully directed to terminate the motion, Doc. 194.

It is SO ORDERED.

Dated:  March 31, 2025
        New York, New York

_____
         Edgardo Ramos, U.S.D.J.